UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| S.D., by and through her guardian Cindy Brown,<br><br>    Plaintiff,<br><br>    v.<br><br>MORELAND SCHOOL DISTRICT<br><br>    Defendant.<br>_____/ | No. C 14-00813 LHK (LB)<br><br>**ORDER GRANTING THE PARTIES' JOINT MOTION TO APPROVE MINOR'S SETTLEMENT**<br><br>[Re: ECF No. 38] |

## INTRODUCTION

Minor S.D., by and through her guardian Cindy Brown, sued the Moreland School District ("MSD") for its alleged failure to provide adequate support and services to her. (Complaint, ECF No. 1.[1]) The parties agreed to settle this action pursuant to the terms described in their joint motion asking the court to approve the settlement. (Motion, ECF No. 39.) They also consented to the undersigned's entry of an order approving it. (*See id.* at 5.) Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument. For the reasons stated below, the court **GRANTS** the parties' motion.

///

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

C 14-00813 LHK (LB)
ORDER

**STATEMENT**

**I. FACTUAL BACKGROUND**[2]

S.D., a minor, is diagnosed with autism and "requires intensive support and high quality interventions" for self-harming behaviors. (Complaint, ECF No. 1 ¶ 8.) Starting at a young age, S.D. began banging her head and "mouthing, chewing and swallowing inedible objects." (*Id.*) Before S.D. transitioned to MSD, she attended a public school in a different district. (*Id.* ¶ 10.) S.D. alleges that her previous school included "appropriate supports and services" for autistic children and that her self-harming behaviors there were mild. (*Id.* ¶¶ 10-11.) S.D. alleges that although she had "behavioral spikes" at her previous school, her head banging disappeared and her risk of injury was minimal to near zero. (*Id.* ¶ 11.)

In August 2012, S.D. transitioned to Easterbrook Discovery School, located in MSD. (*Id.* ¶ 12.) Here, S.D. alleges that her behavior "regressed" in a variety of ways. (*Id.*) Most significantly, S.D. alleges that she began repeatedly banging her head to the point of injury. (*Id.*) On or about September 18, 2012, S.D. "banged her head on the glass covering the fire extinguisher and broke the glass against her head." (*Id.*) MSD hired an independent observer around November 2012 to document S.D.'s behavior. (*Id.* ¶ 16.) The observer noted that S.D.'s "self[-]injurious behaviors, mostly consisting of banging her head on hard surfaces," occurred "2-23x per day, lasting from 5 seconds to 5 minutes per incident." (*Id.*) S.D. claims that she left a mark on her head 83% of the time she banged it, and that the lumps that resulted from S.D.'s head-banging "would stay with her all day." (*Id.* ¶ 26.) In addition, S.D.'s attention span decreased while attending the new school, and she started to "develop adverse reactions even being near the Easterbrook School." (*Id.* ¶ 15.) Finally, S.D. reports other regressive behavior during this time, including refusing to follow instructions, chewing fingernails, chewing off clothing accessories, and hitting her head onto others. (*Id.* ¶ 17.)

S.D. believes that the school was unable to properly care for her. S.D.'s teacher stated that he did not believe "that S.D. was capable of attending school without harming herself." (*Id.* ¶ 34.)

---

[2] The factual background is taken from the district court's July 29, 2014 order denying Moreland's motion to dismiss.

1  S.D. alleges that MSD had no individualized intervention plan for S.D.'s behavior when she started
2  school. (*Id.* ¶ 37.) S.D. also alleges that the staff "went unsupervised for months by anyone with
3  appropriate training in restraining children with severe head banging behaviors." (*Id.*) The aide
4  assigned to work with S.D. was not trained to work with children with autism and children with
5  head-banging behaviors. (*Id.* ¶ 45.) After S.D. put her head through the fire extinguisher glass, the
6  aide believed that S.D. did not require medical examination. (*Id.*) S.D. alleges that the staff used
7  inappropriate and unauthorized physical restrains that were "seriously traumatizing to S.D." (*Id.*
8  ¶ 39.)

9  S.D. alleges that her behavior at her new elementary school was evidence of regression.
10 Although S.D. engaged in some head-banging at her previous school, S.D.'s previous teacher stated
11 that her previous head-banging was "intermittent" and that "weeks went by without any behaviors"
12 (*Id.* ¶ 30.) S.D. was previously able to attend school without being placed at risk of injury. (*Id.*)
13 Additionally, S.D. alleges that she was able to participate in her classroom independently at her
14 previous school, whereas at Easterbrook S.D. became highly dependent on her aide for things she
15 could previously do on her own. (*Id.* ¶ 45.)

16 In January 2013, S.D.'s family asked MSD if S.D. could move to a different classroom. (*Id.*
17 ¶¶ 18-19.) In a meeting held on April 3, 2013, S.D.'s parent expressed serious concern about the
18 change in S.D.'s behavior, including S.D.'s self-injurious behavior, and requested a new placement
19 for the S.D. (*Id.*) MSD denied S.D.'s request for a change of placement. (*Id.* ¶ 20.)

20 S.D. subsequently filed for an Administrative Due Process hearing under Section 1415 of the
21 IDEA. (*Id.*) S.D. argued that the District had denied her a "free appropriate public education"
22 ("FAPE") for the 2012-13 and 2013-14 school years by "failing to offer appropriate placement and
23 support services." (*Id.* ¶ 22.) On January 3, 2014, an Administrative Law Judge ("ALJ") found
24 against S.D. on all issues. (*Id.* ¶¶ 46, 48-49.)

25 **II. PROCEDURAL HISTORY**

26 S.D. filed her Complaint on February 21, 2014. In it, she alleges violations of the Individuals
27 with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq.; Section 504 of the
28 Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and the Americans with Disabilities

Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.  MSD moved to dismiss S.D.'s second and third causes of actions for violations of Section 504 and the ADA, but the court denied the motion. (7/29/2014 Order, ECF No. 29.)

Thereafter, on October 29, 2014, the parties participated in a settlement conference with the undersigned.  (10/29/2014 Minute Order, ECF No. 37.)  The parties agreed at that time to settle their action.  They now have jointly filed a motion asking the undersigned to approve the settlement. (Motion, ECF No. 39.)  The motion sets forth the following settlement terms:

- MSD agrees to pay 70% of the cost for S.B. to attend Creative Learning Center in Los Altos, California for the 2014-2015 school year (including the 2015 extended school year) and the 2015-2016 school year (including 2016 extended school year).  This represents a monetary value to S.D. of approximately $137,340 and is based on a cost of $343.35 per day.  The parties also agree that Creative Learning Center "constitutes 'stay put'" for S.D.'s placement upon the expiration of the 2016 extended school year.
- MSD also agrees to pay $60,000 to S.D., which shall be paid to Leigh Law Group as payment for attorneys' fees incurred in this action and the administrative proceeding.

(*Id.* at 3.)

## ANALYSIS

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir.  2011).  "Rule 17(c) provides, in relevant part, that a district court 'must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action.'"  *Id.* (quoting Fed. R. Civ. P. 17(c)).  "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'"  *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir.  1978)).

As the Ninth Circuit has recently made clear, in cases involving the settlement of a minor's federal claims, district courts should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the

facts of the case, the minor's specific claim, and recovery in similar cases," and should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel — whose interests the district court has no special duty to safeguard." *Id*. at 1181-82 (citing *Dacanay*, 573 F.2d at 1078).

S.D., by and through her guardian Cindy Brown, has agreed to settle her claims against MSD in exchange for 70% of the cost for her to attend Creative Learning Center (which is approximately a $137,340 value) and for $60,000 that will be paid to her counsel as attorneys's fees.  S.D's counsel spent 390 hours on this matter, and S.D. accrued $136,271.25 in fees (based on an hourly rate of $375.00 for senior attorneys and $350 for associate attorneys).  (Motion, ECF No. 39 at 3-4.)  Upon review of the papers submitted, the court finds these amounts and the settlement terms to be fair and reasonable in light of S.D's claims and the facts of the case.  The court also finds the settlement to be in S.D's best interests, as it will provider her with a private placement that is appropriate for her needs.  Accordingly, the court grants the parties' joint motion.

## CONCLUSION

Based on the foregoing, the court grants the parties' joint motion and approves the settlement of S.D.'s claims.

This disposes of ECF No. 39.

**IT IS SO ORDERED.**

Dated: November 25, 2014

_____
LAUREL BEELER
United States Magistrate Judge